John D. Bennett, S.
In this discovery proceeding (Surrogate’s Ct. Act, §§ 205, 206) a demand for a bill of particulars was served on the petitioner. Instead of following the procedure required by rule 115 of the Rules of Civil Practice, the petitioner returned the demand. Thereupon the respondents, instead of moving for a preclusion order as provided in rule 115, now move for an order requiring the petitioner to comply with the demand previously served.
This illustrates the general disregard for the specific procedural requirements of rule 115, which does not seem to have had the salutary effect intended when it was adopted in 1936. Enlightening is the Appellate Division, First Department, 1954 opinion in Hersh v. Home Ins. Co. (284 App. Div. 428, 429-430):
“It is a revealing commentary on the Bar’s indifference to the requirements of rule 115 of the Rules of Civil Practice, that defendants in opposing this motion to preclude, made no attempt whatsoever to justify or even explain their default. They simply questioned seriatim the propriety of all but one of the items, just as though they had made a timely motion to modify the demand. However, rule 115 provides that such a motion must be made within five days after receipt of the demand; and it does not distinguish between failure to respect a demand or failure to respect an order for a bill of particulars in prescribing the discretionary penalty of preclusion.
*241 “We are aware that some lawyers regard a demand for a bill of particulars as an overture that can be disregarded, rather than as a legal process which may be flouted only at peril to a client’s cause. These lawyers will pay no heed to a demand for a bill of particulars until a motion to preclude has been made. Without dwelling on the aspects of rudeness involved in this procedure, such behavior casts unnecessary burdens on already overburdened courts and lawyers. However tolerant lawyers may be of each other’s lapses, busy judges cannot view them with equal equanimity. Last year, in Supreme Court, New York County alone, 1,562 motions to preclude were processed— largely an unnecessary drain on already overtaxed resources.
‘ ‘ The learned Justice at Special Term, during one term, granted several unconditional orders to preclude — in an evident effort to reverse this unprofessional trend before it grows into a pervasive practice. We appreciate the zeal and foresight that prompted these decisions. However, while the conduct of defendants’ lawyers cannot be justified in a professional sense, we must recognize that they are attorneys of good repute who fell into this form of practice in company with a respectable portion of the Bar. Clearly there was no intention to overreach and take undue advantage of their adversaries; nor has the plaintiff been in anywise prejudiced. On the other hand, the preclusion order would probably deprive defendants of any effectual defense to this action. Under these circumstances, we believe that in the proper exercise of discretion defendants should be afforded an opportunity to cure their default. Obviously, we shall henceforth be less likely to regard the practice we here condemn as an element warranting favorable exercise of discretion.”
The effect this forthright language has had (now two years later) is a matter of speculation. (See Inter County Painting Co. v. 200 East End Ave. Corp., 286 App. Div. 482; Petersdorf v. O’Hagen, 286 App. Div. 1100; Address by Samuel S. Tripp, Report of New York State Bar Assn., Yol. LXXIX [1956], pp. 55, 56.)
The practice of ignoring rule 115 places the courts on the well-worn horns of the dilemma, either of enforcing the provisions of an unambiguous rule at the expense of the innocent litigant who knows nothing of the serious consequences that could follow a default in pleading, or of adopting a “ practical ” solution which winks at what usually seems an inexcusable flaunting of the rule. The solution to this dilemma has created problems for the text writers. (Of. the discussion in Tripp’s Guide to Motion Practice [3955 Cum. Supp.] with *242 4 Carmody-Wait on New York Practice, p. 673 et seq. and McCullen on Bills of Particulars [1942], p. 244 et seq.)
In the instant situation the movant has extricated the court from the dilemma referred to by disregarding the procedure available to him to move for a preclusion order. This application then will be treated as if a bill were sought in the first instance by motion pursuant to rule 115 (subd. [b]) of the Rules of Civil Practice.
The application of the Rules of Civil Practice to procedure in this court is stated in rule 3 of the Rules of Civil Practice as follows: 1 ‘ Rule 3. Provisions applicable to proceedings in surrogate’s courts. Except where a contrary intent is expressed in, or plainly implied from, the context, a provision of rules applicable to practice or procedure in the supreme court applies to surrogate’s courts and to the proceedings therein so far as they can be applied to the substance and subject matter of a proceeding without regard to its form.”
Section 316 of the Surrogate’s Court Act provides: “ § 316. Certain provisions made applicable to proceedings in surrogates’ courts. Except where a contrary intent is expressed in, or plainly implied from the context of this act, a provision of law or of rules, applicable to practice or procedure in the supreme court, applies to surrogates’ courts and to the proceedings therein, so far as they can be applied to the substance and subject matter of a proceeding without regard to its form.”
An extensive discussion relating to bills of particulars in the Surrogate’s Court is found in Matter of Herle (157 Misc. 352). At page 357 Surrogate Wingate said:
1 ‘ In view of the multitudinous situations in which the question of the right to additional particulars of the nature of the cause of action or defense arises, it has been the uniform decision that grant or refusal of such relief is properly reposed in the judicial discretion of the trial court. (Kelsey v. Sargent, 100 N. Y. 602, 603; Spencer v. Fort Orange Paper Co., 74 App. Div. 74, 75; Mavholm v. Whale Creek Iron Works, 159 id. 578, 582; Richards v. Miller, 167 id. 443, 444; De Cordova v. Sanville, 171 id. 422, 424; Matter of Bird, 240 id. 747.)
‘1 In determining the propriety of the allowance of a bill of particulars in any given instance, an examination of the situation disclosed by the pleadings and the facts alleged therein in the light of the underlying applicable principles, is, except in purely routine applications, a much safer mode of decision than to attempt to find precedents bearing some similarity to the situation under discussion and then to attempt to discern *243 points of resemblance or difference between them and the situation at bar.”
The applicability of the just-quoted paragraph to the motion here may be judged from apparently contradictory quotations from those cases relied on by the parties here:
‘1 It will be obvious from the foregoing that in the absence of an affirmative answer, when particularization may conceivably be demandable from the respondent in amplification thereof, a bill of particulars is never permissible in a discovery proceeding. Only such particularity of allegation may be required from the petitioner as is expressly specified in the statute, and the grant of the order of examination is, in and of itself, an expression of judicial opinion that the required demonstration has been made with sufficient particularity.” (Matter of Kevill, 166 Misc. 230, 233.)
“ The furnishing of particulars by petitioner is resisted on the ground that this is a proceeding in discovery in which petitioner asserts no bill of particulars may be ordered. This objection is overruled. Such bills are regularly required in such proceedings.” (Matter of Leary, 175 Misc. 253.)
In the texts on Surrogate’s Court practice the cases just cited are referred to without clarification of the issue. (See 4 Jessup-Bedfield on Surrogates’ Law and Practice [1949 and 1955 supps.], § 3076; 3 Warren’s Heaton on Surrogates’ Courts [6th ed. and supp.], § 236, par. 4. els. (d), (i); 1 Harris on Estates Practice Guide [1954], § 425; 2 Bradford Butler on New York Surrogate Law and Practice [1941 and supp.], § 1465.)
Despite the apparent conflict in language, the two cases are easily reconciled. The Kevill decision (supra) relates to a discovery proceeding still in the inquiry stage. The Leary decision (supra) is in a proceeding brought under section 206-a of the Surrogate’s Court Act where there is no provision for a preliminary inquisitorial procedure. The nature of a proceeding brought under sections 205 and 206 of the Surrogate’s Court Act is clearly stated in the Kevill case at page 233:
“In its inception the proceeding is essentially inquisitorial in aspect, or, to borrow the familiar designation of professedly indignant respondents, ‘ a fishing expedition ’. That it may rightfully be prosecuted on this basis is wholly obvious from the language of section 205 of the Surrogate’s Court Act which authorizes its institution upon a demonstration on information and belief of 1 any facts tending to show ’ that any person has possession of or ‘ knowledge or information ’ concerning property which should be delivered to the estate representative, or *244 that a person ‘ refuses to impart knowledge or information he may have concerning the same, or to disclose any other fact which will aid such executor * * * in making discovery of such property.’
‘ ‘ In the absence of an affirmative answer, the proceeding continues as a mere inquisition until the petitioner has established a prima facie case for recovery of some one or more identified items of property. From that time, however, the proceeding becomes a trial of title as to those identified items, although it may in other respects continue its initial character of an inquisition.
ft ft ft
“ Similarly, since the initial purpose of the examination in discovery is to elicit information upon which to found a demonstration for ultimate recovery of assets, it is, in itself, substantially an examination before trial for the eliciting of such facts as are requisite to enable the petitioner to sustain the burden of proof which rests upon him in the absence of an affirmative answer, of demonstrating his ownership and right to immediate possession of anything within the knowledge or control of the respondent. An additional examination of the same nature and for the same purpose would be an anomalous surplusage.”
"Where the respondent interposes a general denial (as in the instant ease) and does not affirmatively assert title, the petitioner’s right to an inquiry is no different than it would be if no answer was filed (Matter of Gergely, 193 Misc. 51). The questions relating to the right to an inquiry are often confused with those of burden of proof, probably because there is often no clearly defined moment when the ‘ ‘ inquiry ’ ’ ends and the “trial” begins. It is sufficient here to point out that where there is no answer or a general denial is interposed, the burden of proof is on the petitioner in a section 205 proceeding. Where there is an affirmative answer alleging title amounting to something more than a general denial as when the answer alleges a gift from the decedent, the burden is on the respondent. (2 Bradford Butler on New York Surrogate Law and Practice [1941] , § 1460; 3 Warren’s Heaton on Surrogates’ Courts [6th ed. and supp.], § 236, pars. 4, 5.) There is an intimate relation between burden of proof and the granting of an order for a bill of "particulars (McCullen on Bills of Particulars [1942] , § 42).
The determination of this motion depends on answers in the affirmative to two questions:
(1) Is this proceeding in the “ trial ” as distinguished from the “ inquiry ” stage?
*245 (2) Is the burden of proof as to title on the petitioner Í Although the answer to the second question is “yes” the answer to the first is “ no
The motion must therefore be denied as having been prematurely made.
Submit order on notice.